Mr. Martin, when you're ready. Thank you, Your Honor. This appeal is from a decision rendered by the Claims Court, and we do not argue with the standard of review as pronounced by the government in its papers. Mr. Martin, the government could have just simply rejected Centech's proposal as failure to comply with the LOS clause and awarded it to the second bidder. Instead they kind of gave everyone a chance to re-bid, including yourself. Doesn't that suggest that you're already getting a pretty big break in this case? Your Honor, I would say no, because I think that the position that the defendant has taken is that the review that is performed by the SBA as part of its Certificate of Competency Program is somehow bound up and part of the review that occurred at the time that the agency issued its request for proposals. And a review was done, a standard was established by the Air Force that offers would be evaluated for compliance with that clause, the Limitation of Subcontracting Clause, based on the AFMC memorandum that had been issued back in 1999. So therefore it was a longstanding policy, apparently supported by the Secretary of Air Force for acquisition, and it was longstanding there, and there was no complaint about that. The proposals were evaluated, and I think that a point worth making out is the clause, Limitation of Subcontracting Clause, appeared by reference as a list of standard clauses that applies to the contract. The law is clear that compliance is determined at the time of award, and that an offer can comply with that provision by signing a contract that has been offered to them. Well, what did you make, therefore, based on that statement with the specific language of the statute, which says concern may not be awarded unless, and then it goes on to say that it's not a matter that's determined down the road, but one in which is a prerequisite for the effectuation of the contract in the first place? The question of whether or not there is compliance is a subjective standard. So therefore, the way the process works is that as a condition of award, the offer must agree to comply with the 50% rule. SENTEC did this. They signed the contract that was tendered to them, and they did not take any exceptions to any of the clauses in the contract, which is what the source said. I don't think you're addressing quite the point of Judge Crow's question. It says the contract may not be awarded, period. Doesn't that control? It says that the contract may not be awarded unless the offer agrees to comply with the clause, and what I'm saying is that by virtue of signing the contract, and this comes right out of the clause itself, by virtue of having signed the contract, SENTEC did agree that it would comply with the clause. The confusion arises because when the agency issued its solicitation, it basically stated that you could comply with the clause by submitting your proposal responsive to that memorandum, which allowed you to comply. But the proposal that SENTEC submitted was not in compliance with the LOS clause, right? It was in compliance with the requirements of the solicitation. The solicitation... You're saying because they would have agreed in the future to comply, they didn't have to comply when they submitted their proposal. Is that what you're saying? What I'm saying is this exactly. But you can see that the problem of that is that it would give an incentive for people to ignore the clause during the solicitation phase to get the bid, and then of course say, oh, but we will agree to do it afterwards, and there'd be no way to police whether the original bid was actually compliant with the clause or not. Well, no, Your Honor. Keep in mind that the reason why we have this case is because unlike any other case I've seen, the Air Force, when it issued its proposal, stated that you can demonstrate... They made a mistake. Everybody agrees. Right. There was a mistake. That's right. You can demonstrate compliance in this manner.  comply. Now, there was no question about this all the way throughout the period of proposal evaluations. No one questioned CENTEC's intent and capability to comply. In fact, the agency made an award based on the fact that they had complied consistent with the solicitation. Then we have a protest. The protest says because CENTEC submitted a proposal in accordance with the Air Force's proposal indicates that they're doing less than 50%. But as a matter of law, the Small Business Act then says, well, if that's the case, if we need to determine whether or not they agreed to comply and whether or not they have the capability to comply, now that becomes a question of responsibility, which the SBA has the sole jurisdiction to determine pursuant to its... But you're not really responding. Excuse me. Judge Proust. You're not really responding to the problem that that would create then, that indeed I as a bidder would submit the cheapest possible bid with 20% compliance. Maybe I'd be the only small business person at all that's going to perform under the contract. And then, of course, I'd say, well, when we get to the contract administration, I'll hire more people for my firm and we'll meet the 50%. But there would be no congruency between the performance and the bid. Well, I think that you have to look also at this contract in terms of its unique aspects. When the government issued this award, they told contractors what categories of labor were supposed to be proposed. They told contractors what labor rates they should apply. They told contractors that they anticipated 100% growth in the requirement. And they contracted on a cost plus basis. So in effect, what they were telling offers is, we don't know what our actual requirements are going to be. So we want you to respond to our performance document so that we can determine your capability to perform. Sentech offered to hire 97% and stated that they would hire 97% of the incumbent staff. Therefore, the issue of compliance with that limitation subcontracting clause really is simply a reallocation of that staff. But keep in mind, the only reason that that issue arose was because the Air Force invited that when they solicited for proposals. Martin, let me ask you one question. Where does this matter stand now? Because in the briefs, I think in the opinion of the Court of Federal Claims, it said that Judge Williams said that the government agreed to defer award until her opinion decided. Now, obviously, that opinion has been issued. Where do matters stand now? The award still has not been made. That a source selection or a resubmission of proposals has occurred, but there is no award at this point in time. So we have a situation where a contract was put out for award. It was determined that the contract documents were defective because they didn't comply with the LOS, right? That's what the claims court ruled, yes. Yeah. And nobody, everybody, I mean, there doesn't seem to be serious dispute that the memorandum upon which the Air Force relied in interpreting the clause was incorrect. And now we're in a situation where they put it out for bid. You have the parties can bid on it in proper form. Why not just go with that? Well, because, Your Honor, in this case, and based on the procurement scheme that is legally in place, the Air Force solicited four proposals when it went out with its RFP, and everyone competed on exactly the same basis. No, everyone agrees with that, but it was errors. In other words, there was an error, if you will, there was an error of law, it appears, in the solicitation that went out. And this happens. I mean, gosh, we see these cases all the time where somebody goes to GAO and there's a protest and it's determined that there was a deficiency in the solicitation documents and they have to do it over again. Well, and that would occur if there was an allegation that there was a failure by the agency to comply with the evaluation scheme that was stated in Section M of the RFP, which is not... As I understand it, you have a situation where they structured it improperly by saying you can comply if you meet this requirement and they set forth a sort of additional requirement in the memorandum, the interpretive memorandum. Well, keep in mind that when the government solicited for offers in response to its RFP, they did not highlight the Limitation of Subcontracting Clause as an issue for evaluation. However, if you look at the scores and what the evaluation team did, they highlighted 51% next to the name of SENTEC, because the issue is not a concrete, you must in your proposal demonstrate that you're complying with the provision. The issue is, will you agree in the performance of the contract to comply? Now, the question is, how would they accomplish compliance with that clause? And based on the fact that the requirement changed, in other words, the scope of work was an estimated scope of work, based on the actual requirement at the time of the responsibility determination and the COC review that the SBA conducted, with better information and with substitution of actual labor rates versus the rates that they were told to use in their proposal, that modified the level of participation that SENTEC would do. However, this concept that somehow SENTEC changed its proposal is not really the case. But your view, therefore, must be that the difference between 42% and 50% had absolutely no effect on any of the four criteria that we used in assessing the bids and making the award. I say it didn't have any effect. It did not. It did not have any effect. So what's the problem? Why is there irreparable harm? I think you asked for an injunction here. Why is there irreparable harm in a do-over if your view was that none of this would change the outcome? Because in a do-over, effectively our contract, which was lawfully awarded, is now at risk. We now have to compete again for it. And the Small Business Act states that once an agency issues a request for a COC to the SBA, the SBA becomes the final arbiter of whether or not there's compliance with that provision. And in effect, the agency now loses its say or its jurisdiction to further participate in that process. Let's see if the agency has a concern about that. Thank you. Thank you. Mr. Martin, we'll preserve the rest of your rebuttal time. And maybe you could pick right up at that point and see if, is this Mr. Mager, Your Honor. Mager. Is the government worried? Is the government worried about? Well, he's saying that agency is going to forfeit some of its ability to supervise the contract award process to the SBA. Well, there is a portion, and we don't contest that the SBA has the ability and the exclusive ability to determine responsibility with regards to the small business provisions. But in order for an offer to be awarded a contract, that offer must not only be responsible, they must not only offer the best value to the United States, but they must also submit a responsive and acceptable proposal. And that's where the flaw in Sentech's reasoning lies. But you're saying that that's the SBA's role and not yours. So does the SBA participate in the initial process in order to make that determination? No. Responsibility, and this is only with regards to responsibility, not responsiveness, which is why Sentech was found or proposal was ultimately found not acceptable by the Air Force and why revised proposals were solicited. But the procedure would be, first, the Air Force would need to make a finding of non-responsibility. And after making a finding of non-responsibility, the question of responsibility is then referred, as it was here, to the Air Force for a certificate or to the SBA for a certificate of competency proceedings. I mean, the SBA, in your view, does not determine responsiveness to the solicitation documents. That is correct, Your Honor. And even the cases cited by Sentech in their brief acknowledge that there is a difference between the question of proposal acceptability, which GAO may review, and which the agency does not. Now, there was, I guess, a little bit of confusion here initially in that the Air Force did refer to responsibility when it probably should have used acceptability or responsiveness to the solicitation. Yes, Your Honor. And we do concede that it was an error to refer the matter to the SBA, especially where the memorandum itself explicitly states that the Sentech group in their proposal will perform 43.2% of the work. In effect, the Air Force found that they were not responsive, but nevertheless referred the matter to the SBA for responsibility. They found they were not responsive, notwithstanding what you would say was the incorrect memorandum that had been sent out to potential bidders. That's correct. Saying how you could comply by a joint venture or subcontracting. Although that memorandum was not explicitly integrated into the contract, like the limitations on subcontracting clause, but it was provided to all offerors. And in the event that the Air Force had decided to exclude Sentech's proposal, might give rise or might have given rise to a reasonable bid protest, seeing as the Air Force had informed them of one thing and subsequently upon finding illegality. You're saying in that circumstance, Sentech would have been in a position to say, look, our bid was responsive in light of this memorandum that was sent to potential bidders. I think they could raise a very significant bid protest that candidly I would not want to be defending. So in the absence of this erroneous information in this policy statement, how would or should the Air Force have proceeded? Would they then throw out all of the bids that don't comply with the 50% and be required to pick whichever one is the best offer remaining that does? Well, it would be an option, but it would not be a good option. I believe what the Air Force did is actually the correct course of conduct, which is to allow the offerors to revise their bids since they had been made aware of the policy memorandum. What I'm saying in the absence of a policy memorandum, how would the Air Force proceed? If the Air Force had messed up by this misinformation or whatever originally, if everything was up and up and correct, and you get these bids, and three out of the four don't comply with the 50%, are they automatically knocked out and then you're left with the remaining- Well, the contracting officer has some discretion, obviously, based upon competition and the number of offerors, but it would be completely acceptable in that case to reject those offerors that did not comply with the limitations on subcontracting clause, yes, as non-responsive. Thank you. Just one question. Do you agree with what Mr. Martin said about the present status of the procurement? It's definitely correct. Centech, as well as Tyburn and the two other offerors are still in line for award. No award decision has been made at this time. We do not anticipate that an award decision will be made. We have had gone through the source selection process, but as far as I know at this point, the source selection authority has not made its final determination that has not been forwarded to the SBA or Congress as it would need to be done in advance of any award. But the awards were submitted in response to what I'll call an unblemished solicitation. In other words, a solicitation that wasn't marred by this previous erroneous document. That is correct. The Air Force made amendments to the solicitation and requested new revised final proposals. I thought I heard you say that we don't anticipate an award. I mean, does that mean never or not imminently? No, we know there is not an award in place yet. I do not know the date when award would take place. There are certain steps that need to be done first. And at this point, I'm not at least aware from my conversations with agency counsel that those steps have been accomplished. But I guess Judge Prost is raising, she's thinking has the procurement been canceled or something like that. The procurement has not been canceled. Basically, the Air Force requested revised final proposals from all offerors informing them that the policy memorandum had been rescinded, restating and making several other changes to solicitation because the last revised final proposal had taken place approximately two years ago and the Air Force needed to make some changes in order to update. Now, the bids that were received are being considered. Yes. And as far as your knowledge is concerned, at some point, there will be a contract award. Yes. Unless the court has any further questions for those reasons and the reasons set forth in our brief, we respectfully request that the court affirm the decision of the Court of Federal Claims. Thank you, Mr. Mager. Mr. Schaffer. Good morning, Your Honors. May it please the court, I'm Jonathan Schaffer. I represent Tyburn Corporation. We were the original protester at GAO and we supported the Air Force at the Court of Federal Claims. There were just a few points I wanted to hit. I think it's very important that the court consider the differences between responsibility and acceptability. I know the Justice Department addressed that, but to come back to it, responsibility really deals with, is the company capable of doing the work? Acceptability is, what did the proposal say? Here, the proposal was very clear that they were going to propose 43 percent of the work with prime contract labor. From your standpoint, did the Air Force handle it correctly when it ordered a do-over? Well, before GAO, we had asked that CENTAC be removed from the competition and that the contract be awarded to Tyburn. Now, there were a host of other bid protest issues that we had raised that were never dealt with by GAO. GAO disagreed with us and said that because CENTAC never had an opportunity to address this issue, the limitation issue, and the other bidder who had the same problem, it had to go back out for competition with everybody. At that point, the Air Force also said, in accordance with the GAO decision, we're going to fix other things. Tyburn had raised about 25 different problems with the procurement, including bias, a very serious bias issue, and the agency said, we're going to fix all those things. And they did fix all those things in the new solicitation. To answer your question, our client's position is they should have thrown CENTAC out and awarded the contract to us. We had an acceptable proposal. We did better than CENTAC in a number of categories, and we should have received the award. Having said that, and I think the Court addressed this in Griffey's landscaping, the Court of Federal Claims, I do think the agency did the best they could. They had a GAO decision. They had made a mistake. They said, we're going to go back and fix everything. They looked closely at all of the issues that Tyburn raised and addressed many of those. And in Griffey's landscaping, the Court said, when we're reviewing an agency corrective action, assuming there's no showing of bad faith, we should give the agency latitude to try to fix things and do the right thing. That's the way the process is supposed to work. Mr. Tyburn. Mr. Schaefer, you represent Tyburn. Yes. Do you agree with what Mr. Nagar just said about where the procurement process stands right now? That's my understanding, that the agency has fixed the problems. They've gone back out. There's a new RFP, and the offerors have submitted everything that needs to be submitted. So I think all we're waiting for is the award process and the next steps. Are you waiting for the Court? My understanding is not waiting for the Court. It's just there is a lengthy process to address everything. The other thing I wanted to just briefly address, the Ascension Council suggested this contract is somehow unique, and that's not accurate. This is a cost reimbursement contract. The government awards many, many cost reimbursement contracts, and the RFP and the offerors' proposals are what counts. The FAR and SECA says that you have to evaluate based on what the offeror proposes, and if the offeror proposes, I'm going to do 43% of the work, that's what counts for proposal evaluation. If after award, the agency comes in and says, you know what? We really want you to do more. We want you to do 50%. The company is going to say, that's fine, but it's a cost reimbursement contract, and it might cost you more money. Now, in this case, we know pretty much how much more it's going to cost, because our expert, outside expert of CPA, Charlie Bonuccelli, put a declaration into GAO, and it's in the record. It's in our appendix, and it was millions and millions of dollars. It's a very large number, and that shows that there is a substantial effect by letting change their proposal after proposal due date, after award, to make changes. That's exactly what happens here, and that's why, if Sentech were allowed to perform on that additional contract, it would cost the government millions or tens of millions of dollars more than what they proposed, and that's the problem with the approach that Sentech has adopted. Thank you, General. Thank you, Mr. Schaffer. Mr. Martin, you have a little over two minutes remaining. Okay, thank you, Your Honor. I would just like to point out that the Bonuccelli declaration compared apples and oranges. It compared the COC review, which changed the labor rates, as was envisioned, versus what offers were told they had to propose when they submitted their proposals. I think that, factually, the court has to be aware that the agency did find that Sentech submitted a successful proposal or acceptable proposals. They then, in response to the protest, issued a determination of non-responsibility and requested the COC from the SBA. But that was erroneous. No, that wasn't. Sentech responded properly to a defective solicitation. A solicitation that was defective because it was augmented by incorrect information. And then the government spoke in terms of responsibility when it was really responsiveness that was at issue. Your Honor, actually, and the SBA points this out in their review of what occurred here, they actually stated that it's clear that the referral to the SBA was merely a response to the protest. All right? And it was done to, in effect, allow the SBA to make a determination of whether or not there's compliance, which is consistent with the law. But by issuing a determination of non-responsibility, at that point in time, the law is clear that when you do that, the agency is divested of any further authority and the determination by the SBA becomes conclusive and no further eligibility criteria can be imposed on the contractor. Therefore, we would assert that everything that happened after that is what was illegal in a violation of law. At that point, the agency didn't have authority legally to then invalidate that COC. The SBA, the GAO did not have the authority to order it. And therefore, it was the determination of the certificate of the SBA in the Certificate of Compensation Program. Thank you, sir. I had understood, maybe I'm wrong, I had understood that, yes, you're absolutely right, the agency, the Air Force, used the term responsibility. But what it was thinking was what had happened in terms of the GAO protest and so forth, and it should have used the word responsiveness or acceptability. Right, and Your Honor, if I may respond to that. Maybe that's incorrect. Well, if I may respond to that, if you look at all the cases dealing with this issue of acceptability versus responsibility, the standard is, has the offeror done something to indicate that they would not or could not comply? That's the standard. It reads throughout all the GAO cases, or many of them, and it reads in the Coffman case that the GAO cited. There was nothing in here that gave rise to that issue. And the ultimate question comes down to this, is if the agency can simply recharacterize the decision or the question presented to be a question of acceptability, then in effect, the agency and contracting officers are in a position to degrade or erode the area of exclusive responsibility reserved to the SBA. And that's the real issue here, is the small business offers are going to be prevented the opportunity to have the benefit of that program, and larger businesses are going to get the benefit of what's going on here because, in effect, all the agency has to do is say, well, you didn't comply with the requirement. Therefore, we're going to make a determination that your proposal is unacceptable. And in this case, they're doing it well after the fact, after they had already awarded the where the ultimate issue lies is the erosion of the COC program. And we would assert that- Final comments, Mr. Martin? Your time's expired. Can you give us a- Can you wind up with a sentence? Well, our conclusion is this, is that the law is clear. We're entitled to the results of the SBA. We believe the SBA has the jurisdiction of this matter, and that affects the outcome of the case. Thank you. Thank you.